IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

OSIE LEE DAVIS,                          )
                                         )
         Petitioner,                     )
                                         )
v.                                       )          Case No. 2:21-cv-485-ECM-CWB
                                         )          [WO]
UNITED STATES OF AMERICA,                )
                                         )
         Respondent.                     )

RECOMMENDATION OF THE MAGISTRATE JUDGE

Osie Lee Davis ("Davis") has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. 1).[1]  For the reasons discussed below, the Magistrate Judge recommends that the § 2255 motion be denied without an evidentiary hearing and that this action be dismissed with prejudice.

I.    **Background**

In August 2019, Davis was named in an eight-count indictment charging him with: one count of possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count 1); six counts of possessing controlled substances with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (Counts 2-5, 7, and 8); and one count of possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(1)(A) (Count 6).  (*See* Crim. Doc. 22 at pp. 1-4).  At his October 2019 trial, Davis contested only the firearm counts (Counts 1 and 6) and

---

[1] Documents filed in this action are referenced as "Doc."  Documents filed in the underlying criminal case (No. 2:19-cr-57-ECM) are referenced as "Crim. Doc."  Pinpoint citations refer to page numbers affixed electronically by the CM/ECF filing system and may not correspond to pagination on the versions presented for filing.

stipulated to his guilt on the drug distribution counts.[2]  (Doc. 18-3 at pp. 14, 38).  As to the firearm counts, Davis contended that the loaded handgun police found between the driver's seat and center console of his vehicle belonged to his stepson and that he was unaware the handgun was inside the vehicle.[3]  On October 22, 2019, a jury found Davis guilty on all eight counts of the indictment.  (Doc. 18-4 at pp. 120-21).  On August 28, 2020, the district court sentenced Davis to imprisonment for 360 months.  (Doc. 18-5 at p. 54).

Davis appealed only his firearm convictions, arguing (1) that the district court abused its discretion by admitting testimony from ATF Special Agent Stacy Van Der Westhuizen that Davis's stepson, to whom the handgun belonged, was not in Troy, Alabama when the handgun was found in Davis's vehicle; and (2) that Special Agent Van Der Westhuizen's testimony violated the Confrontation Clause.  (Doc. 4 at pp. 19-27).  On May 4, 2021, the Eleventh Circuit issued an opinion upholding Davis's convictions and sentence.  *United States v. Davis*, 854 F. App'x 341 (11th Cir. 2021) (per curiam).

On July 15, 2021, Davis filed the pending motion under 28 U.S.C. § 2255 to assert the following claims:

1.      that his trial counsel rendered ineffective assistance by allowing him to stipulate to guilt on the drug distribution counts without first explaining the elements of those offenses;

---

[2] The six drug distribution counts consisted of one count of possessing methamphetamine with intent to distribute, two counts of possessing powder cocaine with intent to distribute, one count of possessing Clonazepam with intent to distribute, and two counts of possessing marijuana with intent to distribute.  (Crim. Doc. 22 at pp. 1-4).

[3] Officer Bryan Baldwin found the handgun after stopping Davis on January 31, 2017 for driving without headlights.  (Doc. 18-1 at p. 5).  Also found inside the vehicle were three bags of marijuana with a total weight of 1.91 grams, seven bags of powder cocaine with a total weight of 2.28 grams, a bag containing a detectable amount of methamphetamine, 40 methamphetamine pills with a total weight of 12.86 grams, and 39 Clonazepam pills.  (*Id.*).  On October 5, 2018, police pulled Davis over for another traffic violation—leading to the discovery of more amounts of marijuana and powder cocaine.  (Doc. 18-1 at p. 6).

2.      that his trial counsel was ineffective for failing to follow up on a lead about a photograph allegedly showing Davis's stepson with the handgun after Davis purportedly told his stepson the handgun had been stolen;

3.      that his trial counsel was ineffective for failing to subpoena the list of witnesses Davis had provided;

4.      that his appellate counsel was ineffective for failing to argue that the jury should have been instructed on simple possession of controlled substance instead of possession of controlled substances with the intent to distribute;

5.      that his appellate counsel was ineffective for failing to pursue issues reserved at trial and sentencing, specifically, the district court's (a) allowance of evidence that Davis admitted to another offense and (b) imposition of sentence against Davis as an armed career criminal and career offender; and

6.      that he was unlawfully sentenced as an armed career criminal and career offender.

(Doc. 1 at pp. 4-7).

On September 23, 2021, Davis amended his § 2255 motion to add claims that (1) the prosecution denied his right to due process by failing to provide him with certain *Brady*, *Giglio*, and *Jencks* materials, (2) his trial counsel conspired with the government to prevent him from seeing grand jury testimony, and (3) his sentence under the Armed Career Criminal Act ("ACCA") violated the Supreme Court's holding in *Johnson v. United States*, 576 U.S. 591 (2015).  (Doc. 8 at pp. 1-6).

## II.    Legal Standard

Relief under § 2255 "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice."  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  A prisoner may obtain relief under § 2255 when the trial court imposes a sentence that (1) violates the Constitution or laws of the United States, (2) exceeds its

jurisdiction, (3) exceeds the maximum authorized by law, or (4) is otherwise subject to collateral attack.  28 U.S.C. § 2255; *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).  If a court determines that a prisoner is entitled to § 2255 relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).  The burden of establishing that vacatur of a conviction or sentence is appropriate falls upon the petitioning prisoner.  *Beeman v. United States*, 871 F.3d 1215, 1221-22 (11th Cir. 2017).

**III.    Discussion**

**A.    Claims for Ineffective Assistance of Counsel**

To prevail on an ineffective-assistance of counsel claim, a petitioner must show that his counsel's performance was deficient and that the deficient performance prejudiced him.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Performance is deficient when it falls below "an objective standard of reasonableness and [is] outside the wide range of professionally competent assistance."  *Johnson v. Sec'y, DOC*, 643 F.3d 907, 928 (11th Cir. 2011) (internal quotation marks omitted).  Generally speaking, in order to establish prejudice a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  Unless a petitioner satisfies the showings required under both the performance and prejudice prongs of *Strickland*, relief on an ineffective-assistance claim should be denied.  *Id.* at 687.  Once a court decides that one of the requisite showings under *Strickland* has not been made, it need not decide whether the other has.  *Id.* at 697; *see Clark v. Comm'r, Alabama Dep't of Corr.*, 988 F.3d 1326, 1331 (11th Cir. 2021).

A defendant's right to effective assistance of counsel continues through direct appeal.  *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  To assess the performance of appellate counsel, a court also applies the *Strickland* two-prong, deficient performance/prejudice test.  *United States v. Scripps*, 961 F.3d 626, 632 (3d Cir. 2020).  To establish ineffective assistance of appellate counsel, a petitioner must demonstrate "that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker[.]  'Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'"  *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985)).

## 1.    Failure to Explain Elements of Drug Distribution Counts

Davis contends that his trial counsel rendered ineffective assistance by allowing him to stipulate to guilt on the six drug distribution counts (Counts 2-5, 7, and 8)  without explaining the elements of those offenses to him.  (Doc. 1 at p. 4).  Davis's trial counsel, Stephen Ganter, has submitted an affidavit stating that he explained the elements of each charged offense to Davis and that "based on the admissible video recordings [of the arresting officer's discovery of drugs in Davis's car], it was a trial strategy to admit to the possessing with the intent to distribute the drugs" while contesting whether Davis knew of the presence of the handgun found inside the vehicle. (Doc. 5 at pp. 1-2).

The record reflects that Ganter informed the district court and the government at the last pretrial conference on October 16, 2019 that Davis intended to take responsibility for the drug distribution charges and to contest only the firearm charges.  (Doc. 18-2 at pp. 3, 11).  Shortly before the jury was struck on October 21, 2019, the district court confirmed on the record with Davis that he indeed concurred with Ganter's trial strategy of admitting guilt on the drug

distribution counts while challenging the firearm counts.  (Doc. 18-3 at p. 14).  In his opening statement to the jury, Ganter thus stipulated to Davis's guilt on the drug distribution counts.  (Doc. 18-3 at p. 38).  And Ganter did so again in his closing argument.  (Doc. 18-4 at p. 97).

Davis does not explain what he failed to understand about the elements of the drug distribution counts; nor does he suggest any defense that might have been mounted based upon a more full understanding of the elements.  Moreover, nowhere in his § 2255 motion does Davis assert that he was innocent of the drug distribution charges.  As reflected in Ganter's affidavit and Davis's presentence report (*see* Doc. 18-1 at pp. 5-6), the evidence of guilt on the drug distribution counts was strong.  Davis does not contend otherwise.

On this record, Davis has failed to demonstrate deficient performance or resulting prejudice due to Ganter's alleged failure to explain the elements of the drug distribution charges.

### 2.    Failure to Follow Up on Lead about Photograph

The handgun police found in Davis's vehicle at the time of his January 2017 arrest in Troy, Alabama belonged to Taylor—who was living in Florida at the time.  (*See* Doc. 18-2 at pp. 4-5; Doc. 18-3 at p. 95).  Davis maintained that he did not know the handgun was in his vehicle and that it must have been left there by Taylor.  (Doc. 18-2 at pp. 4-5).  Taylor testified that he had not seen the handgun since late 2016 and that Davis told him in December 2016 that the handgun had been stolen from his Troy residence.  (Doc. 18-3 at pp. 94-95).  Davis asserts that Ganter rendered ineffective assistance by failing to follow up on a lead regarding a photograph allegedly showing Taylor with the handgun a month after Davis stated the handgun had been stolen.  (Doc. 1 at p. 5).  In his affidavit, Ganter states that he did follow up on the lead about Taylor's possessing of the handgun.  (Doc. 5 at p. 2).

To show prejudice based on defense counsel's allegedly inadequate investigation, a defendant must show what information would have been obtained through further investigation <u>and</u> a reasonable probability that it would have produced a different outcome in the proceedings. *Palmer v. Clarke*, 408 F.3d 423, 445 (8th Cir. 2005); *United States v. Price,* 357 F. Supp. 2d 63 (D.D.C. 2004).   Davis provides no details about the alleged photograph showing Taylor with the subject handgun; nor does he show how such a photograph would have cleared him of knowingly having the handgun inside his vehicle.   He thus has failed to demonstrate that Ganter's actions were professionally unreasonable or that he was prejudiced.

### 3.   Failure to Subpoena Witnesses

Davis next asserts that Ganter was ineffective for failing to subpoena "a list of witnesses" he says he provided to Ganter—although Davis identifies no specific witness he wanted Ganter to subpoena.  (Doc. 1 at p. 5).  Addressing Davis's claim, Ganter states:

> Petitioner alleges that I failed to subpoena a list of witnesses he provided me. Counsel recalls subpoenas for Mr. Davis's sister, Michelle Thomas, who traveled from Florida, and another witness, Henry Haynes II, the owner of the firearm. Counsel does not have independent recollection of a list of witnesses. Counsel does recall the Petitioner providing us with names of witnesses which we followed up with during pretrial investigation.

(Doc. 5 at p. 2).

Ineffective-assistance claims based on uncalled witnesses are disfavored.  *Sanders v. United States*, 314 F. App'x 212, 213 (11th Cir. 2008).  "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [courts] will seldom, if ever, second guess."  *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995).  "This is especially true because allegations of what a witness would have testified are largely speculative."  *Jones v. McNeil*, No. 07-22367-CIV, 2009 WL 1758740, at *6 (S.D. Fla. Jun. 22, 2009).  "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by

the witness or an affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted).  Further, "[c]ounsel cannot be deemed deficient for failing to call an unavailable witness." *Brown v. McNeil*, No. 09-61055-CIV, 2010 WL 6405670, at *10 (S.D. Fla. July 12, 2010).  And a petitioner cannot maintain an ineffective assistance of counsel claim "simply by pointing to additional evidence that could have been presented." *Id.* (quoting *Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1324 (11th Cir. 2002)).

Davis proffers no testimony, in any form, of an uncalled witness he wanted Ganter to subpoena.  He fails even to identify a specific witness on the list he says he provided to Ganter— whose sworn affidavit reflects efforts to subpoena two witnesses to testify in Davis's defense. On this record, the court finds no deficient performance by Ganter, and Davis has failed to demonstrate any prejudice.

## 4.    Failure to Argue for Simple Possession of Controlled Substances

Davis appears to contend that his appellate counsel, Thomas M. Goggans, was ineffective for failing to argue that the district court should have instructed the jury on simple possession of controlled substances and not possession of controlled substances with the intent to distribute. (Doc. 1 at pp. 7-8).[4]  According to Davis, "the arresting officer clearly stated" that he found Davis with only "a personal use amount of drugs" such that he should have been charged with no more than simple possession.  (*Id.* at p. 7).

---

[4] Davis's presentation of this claim is vague.  While he asserts it as a substantive claim in his motion (Doc. 1 at p. 7), he appears also to assert that Goggans should have raised the claim on appeal (*id.* at p. 8).

8

Because of the conclusory fashion in which Davis asserts his claim, it is unclear whether he is arguing that the district court failed to give a jury instruction it should have given, or whether he objects to a jury instruction that the district court in fact gave.  Davis points to no specific jury instruction, however, and the defense made no argument that the jury should be instructed on simple possession and not possession with the intent to distribute.  Because no such issue was raised in the district court, it would have faced plain error review on appeal.  And Davis presents nothing in his motion to demonstrate plain error.  Indeed, an argument that Davis merely was guilty of simple possession would have been contrary to the trial strategy in which Davis concurred.  Finally, Davis mischaracterizes the testimony of the arresting officer.  The officer did not, as Davis maintains, "clearly state" that Davis was found with only "a personal use amount of drugs."  To the contrary, the officer testified that he would <u>not</u> say the drugs were packaged for personal use. (Doc. 18-3 at p. 59: "I would say it's packaged to sell.").  Davis therefore has failed to present specific facts to support his claim.

### 5. <u>Failure to Pursue Issues Raised at Trial and Sentencing</u>

Davis also claims that Goggans was ineffective for failing to pursue issues he says were reserved at trial and sentencing, specifically, the district court's allowance of evidence of his admission to another offense and the imposition of his sentence as an armed career criminal under the ACCA and as a career offender under the sentencing guidelines.  (Doc. 1 at p. 5).

### a. *Evidence of Earlier Gun Possession*

In a motion for new trial, Davis argued that the district court erred by allowing evidence that he admitted during a custodial interrogation following his January 2017 arrest to having possessed a firearm during another traffic stop that occurred approximately three months before the traffic stop that led to discovery of the handgun at issue in the indictment.  (Crim. Doc. 78 and

Crim. Doc. 56).  The gun Davis possessed during the November 2016 traffic stop, which officers discovered when it fell to the ground from Davis's pants, was not the handgun police found in Davis's car during the January 2017 stop and was not the handgun that was the basis of the charges in the indictment.  (*See* Doc. 18-1 at p. 5).  Before trial, Ganter moved in limine seeking exclusion of any evidence that Davis admitted to police during his January 2017 interrogation that he knowingly possessed the gun found during the November 2016 stop.  Ganter argued that such evidence was irrelevant and prejudicial under Federal Rules of Evidence 404(b) and 403.  (*See* Crim. Doc. 27).  The district court, over Ganter's objection, permitted introduction of the evidence at trial, finding that because the question of knowing possession was at issue the government could present evidence that Davis had knowingly possessed a firearm under similar circumstances on another occasion, *i.e.*, November 2016.

> In denying Davis's motion for new trial, the district court reasoned as follows:
>
> [T]he Eleventh Circuit considers 404(b) to be a rule of inclusion, [*United States v*]. *Sanders*, 668 F.3d [1298,] at 1314 [(11th Cir. 2012)]. ...  Here, the uncharged possession occurred on November 1, 2016—approximately three months before the Defendant's January 31, 2017 arrest for the charged firearm possession.  On both occasions, the Defendant was found in his car with a firearm—in the uncharged event, the firearm was in his waistband, and in the charged event, the firearm was located between the driver's seat and the center console.  Thus, the circumstances of the two offenses are very similar, and the events occurred only a few months apart.  This Court allowed introduction of evidence related to the 2016 gun possession because it was offered to show knowledge or lack of mistake.  The Government introduced evidence of the uncharged conduct to prove an important element of its case, and it was not unduly prejudicial.
>  . . .
> The Government was entitled to present evidence that the Defendant previously possessed a firearm in order to show knowledge or intent.  Thus, the evidence did not constitute propensity evidence. While the evidence was not favorable to the Defendant, it was not unduly prejudicial because it supported a crucial part of the Government's case—that the Defendant knowingly possessed the firearm.

(Crim. Doc. 82 at pp. 8-9).

Davis points to no error in the district court's analysis.  If pursued on appeal, the claim would not have succeeded.  Davis therefore has failed to demonstrate that it was professionally unreasonable for Goggans not to raise the claim or that he was prejudiced by Goggans's failure.

### b.    *Sentence under ACCA and as a Career Offender*

Davis claims that Goggans should have pursued arguments at sentencing to challenge imposition of his sentence as an armed career criminal under the ACCA, 18 U.S.C. § 924(e), and as a career offender under the sentencing guidelines, U.S.S.G. § 4B1.1.  (Doc. 1 at p. 5).  Though he does not clearly identify the arguments he believes Goggans should have pursued, Davis maintains elsewhere in his § 2255 motion that his sentence as an armed career criminal and career offender was "illegal" because it contravened provisions of the First Step Act.  (*See* Doc. 1 at p. 6).  The First Step Act of 2018 modified the enhancement provisions of 21 U.S.C. § 851 to change what qualifies as a predicate offense triggering a recidivist enhancement under 21 U.S.C. §§ 841(b)(1)(A) & (B) for convictions under 21 U.S.C. § 841(a)(1).  Under § 401 of the First Step Act, only a "serious drug felony" or "serious violent felony," defined as an offense for which an offender served a term imprisonment of more than one year, now qualifies as a § 851 predicate offense, rather than the previously included "felony drug offense," defined as an offense punishable by imprisonment of more than one year.  *See* 21 U.S.C. § 851 (as amended by the First Step Act, § 401(a)); *see also* 21 U.S.C. §§ 802(57)(A) and (58)(A) (defining "serious drug felony" and "serious violent felony," respectively).[5]  This statutory change applies to conduct that

---

[5] Section 401 of the First Step Act also reduced the mandatory enhanced minimum penalties applicable to offenders with one or more prior predicate offenses.  *See* First Step Act § 401(a)(2).  Section 401 reduced the mandatory minimum penalty from 20 years to 15 years for defendants convicted under 21 U.S.C § 841 with one prior qualifying offense, and from life imprisonment to 25 years for defendants with two prior qualifying offenses.  *Id.*

occurred before the First Step Act's enactment—December 21, 2018—"if a sentence for the offense has not been imposed as of [December 21, 2018]." *See id*. at § 401(c).

Davis's counsel at sentencing, James Matthew Williams, argued that several of Davis's prior controlled substance convictions, for which the government gave § 851 notice of its intent to use for purposes of enhancing Davis's sentence on the drug distribution counts, were excluded from use under provisions of the First Step Act. (*See* Crim. Doc. 104 at pp. 6-7, 9-11; Doc. 18-5 at pp. 41-42). Williams cited provisions of the First Step Act defining "serious drug felony" to mean an offense for which an offender actually served a term imprisonment of more than one year. He argued that Davis served less than 12 months' imprisonment for some of the prior convictions. (Crim. Doc. 104 at pp. 6-7, 9-11; Doc. 18-5 at pp. 41-42).

The district court overruled Williams's First Step Act objection. (Doc. 18-5 at p. 43). When making its ruling, the district court observed that the cited provisions of the First Step Act applied only to sentences enhanced under 21 U.S.C. §§ 841(b)(l)(A) and (b)(l)(B), while Davis's enhanced sentence was governed by 21 U.S.C. §§ 841(b)(l)(C), (D), and (E). (Doc. 18-5 at pp. 41-42). The district court therefore found that the First Step Act did not apply to Davis's sentence on his drug count convictions. (*Id*. at p. 43).

Davis presents nothing to undermine the district court's finding and is entitled to no relief on a substantive claim that his sentence was "illegal" because it contravened provisions of the First Step Act. For the same reasons, Davis's appellate counsel did not render ineffective assistance by failing to pursue arguments concerning the First Step Act, *i.e.*, counsel is not ineffective for failing to pursue meritless claims. *See United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992).

While presenting no supporting argument or evidence, Davis appears to claim further that the district court erred by sentencing him as a career offender under the sentencing guidelines and, relatedly, that Goggans was ineffective for failing to pursue such a claim on appeal. (*See* Doc. 1 at pp. 5-6). The career offender provisions of the sentencing guidelines, U.S.S.G. § 4B1.1-.2, provide for enhanced sentences for certain defendants. Under § 4B1.1, a defendant is a career offender if (1) he was at least 18 years old when he committed the instant offense of conviction, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1(a) (emphasis added). At sentencing, Davis's counsel (Williams) raised the issue of whether the convictions cited in paragraphs 42, 46, and 47 of the PSR counted toward a finding of career offender status. (Doc. 18-5 at pp. 32-39). The conviction cited in paragraph 42 of the PSR was a 1999 Florida conviction for aggravated battery. (Doc. 18-1 at p. 12). The convictions cited in paragraphs 46 and 47 were two separate 2012 Alabama convictions for possession of marijuana in the first degree. (*Id.* at pp. 13-14). As for the 1999 Florida conviction, Williams argued that the government did not prove Davis served a sentence for that conviction within the 15-year period set out in U.S.S.G. § 4A1.2(e)(1). (Doc. 18-5 at pp. 32-37). Williams additionally argued that Davis's Alabama convictions for possession of marijuana in the first degree should not be counted as two separate convictions. (*Id.* at pp. 36-37). The district court heard the arguments of counsel, reviewed all relevant documentation, and found that "two prior convictions, those referenced in paragraphs 46 and 47, possibly paragraphs 42 ... are predicate offenses for the purposes of the career offender enhancement under the guidelines." (*Id.* at p. 38). Davis fails to show he was wrongly sentenced

13

as a career offender, and Davis is entitled to no relief on his related claim of ineffective assistance of counsel.

Davis also claims he was wrongly sentenced as an armed career criminal under the ACCA because he did not have the requisite number of prior convictions for "serious drug offenses" (*see* Doc. 8 at p. 6) and that appellate counsel (Goggans) should have pursued the issue on appeal (*see* Doc. 1 at p. 5).  A conviction for being a felon in possession of a firearm normally carries a statutory maximum sentence of ten years' imprisonment.  18 U.S.C. § 922(g), § 924(a)(2). The ACCA, however, carries an enhanced penalty of at least fifteen years' imprisonment if a defendant has three or more prior convictions that qualify as either a "violent felony" or a "serious drug offense." *See* 18 U.S.C. § 924(e).  "Serious drug offense" is defined as including "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance ..., for which a maximum term of imprisonment of ten years or more is prescribed by law."  18 U.S.C. § 924(e)(2)(A).  At sentencing, the district court found that Davis's prior convictions cited in paragraphs 35, 37, 42, 46, and 47 of the PSR (*see* Doc. 18-1 at pp. 9-13) were all qualifying predicate offenses under the ACCA.[6]   (Doc. 18-5 at p. 32).

Davis specifically contends that two of his prior Alabama convictions for possession of marijuana in the first degree in violation of Ala. Code § 13A-12-213—those cited in paragraphs 46 and 47 pf the PSR—were not "serious drug offenses" useable for enhancement under the ACCA.[7]  But a conviction for possession of marijuana in the first degree for other than personal under Ala. Code § 13A-12-213(a)(l) carries a statutory maximum sentence of 10 years and

---

[6] The conviction cited in paragraph 35 of the PSR was a 1991 Florida conviction for robbery. (Doc. 18-1 at p. 9).  The convictions cited in paragraph 37 were 1995 Florida convictions for delivery of cocaine and possession of cocaine with the intent to deliver.  (*Id.* at p. 10).

[7] *See* Amendment to § 2255 Motion.  (Doc. 8 at p. 6).

therefore satisfies ACCA's "serious drug offense" definition.  *See United States v. Robinson*, 583 F.3d 1292, 1296-97 (11th Cir. 2009); 18 U.S.C. § 924(e)(2)(a)(i).   At sentencing, the government provided certified convictions, including *Shepard* documents (*see* Doc. 8 at p. 6), showing that Davis's prior convictions for possession of marijuana in the first degree were for possession for "other than personal use," *i.e.*, under § 13A-12-213(a)(l).  (Doc. 18-5 at p. 30). Thus, those convictions were "serious drug offenses" useable for sentencing under the ACCA, and Davis has failed to show that he was wrongly sentenced under the ACCA when the district court counted his two Alabama convictions for possession of marijuana in the first degree as qualifying predicate offenses.

Davis additionally claims that use of his Alabama convictions for possession of marijuana in the first degree as predicate offenses under the ACCA violated the Supreme Court's holding in *Johnson v. United States*, 576 U.S. 591 (2015).  (Doc. 8 at p. 6).  But in *Johnson*, the Supreme Court addressed the issue of unconstitutional vagueness as to what constitutes a "violent felony" for purposes of the ACCA, a term defined by 18 U.S.C. § 924(e)(2)(B)'s "residual clause" to include any felony that "involves conduct that presents a serious potential risk of physical injury to another."  The Supreme Court was not addressing what constitutes a "serious drug offense" for purposes of the ACCA.  Because Davis is challenging what constitutes a serious drug offense, not a violent felony under § 924(e)(2)(B)'s residual clause.  *Johnson* simply does not apply.

### B.    Alleged Prosecutorial Misconduct

Davis claims that (1) the prosecution denied his right to due process by failing to provide him with certain *Brady*, *Giglio*, and *Jencks* materials[8] and (2) his trial counsel "conspired" with

---

[8] *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (due process requires that the government disclose to the accused any favorable evidence in its possession that is material to guilt or punishment); *Giglio v. United States*, 405 U.S. 150, 154 (1972) (the due process requirements enunciated in *Brady* include the right of defendants to secure from the prosecution disclosure of materials

the government to prevent him from seeing grand jury testimony.  (Doc. 8 at pp. 1-5).  Davis's claim concerns the government's alleged failure to provide him with the supposed grand jury testimony and statements of Tanya Perez and the supposed grand jury testimony of his stepson, Christopher Taylor.  The record reflects, however, that the government complied with all of the disclosure mandates of *Brady*, *Giglio*, and *Jencks*.  Moreover, neither Perez nor Taylor even testified before the grand jury.   And Perez did not testify at trial.  Although Taylor did testify at trial, the substance of his testimony was made known to the defense well in advance, and all *Brady*, *Giglio*, and *Jencks* materials were timely provided.  Finally, Davis points to no evidence that Ganter "conspired" with the government to prevent him from seeing any grand jury testimony.  Such an allegation is nothing more than unsupported speculation.  Because his claims are "merely conclusory allegations in search of nonexistent facts" (Doc. 18 at p. 20), Davis can show no prosecutorial misconduct or resulting prejudice.

## IV.   Conclusion

For the reasons stated above, it is the **RECOMMENDATION** of the Magistrate Judge that the § 2255 motion be **DENIED** without an evidentiary hearing and that this case be **DISMISSED** with prejudice.

It is **ORDERED** that any objections to this Recommendation must be filed no later than **May 29, 2024**.  An objecting party must identify the specific portion(s) of all factual findings or legal conclusions to which the objection is made and must describe in detail the basis for each objection.  Frivolous, conclusive, or general objections will not be considered.

---

affecting the credibility of government witnesses); Jencks Act, 18 U.S.C. § 3500, codifying *Jencks v. United States*, 353 U.S. 657 (1957) (generally requiring the government, on motion of a defendant, to produce statements in its possession of witnesses who testify at trial).

Failure to file a written objection to this Recommendation shall bar a party from a *de novo* determination by the District Judge of any factual findings or legal conclusions contained herein and shall waive the right of the party to challenge on appeal any subsequent order that is based on factual findings and legal conclusions accepted or adopted by the District Judge, except upon grounds of plain error or manifest injustice. *See* 11th Cir. R. 3-1; *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

**DONE** this the 15th day of May 2024.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**